IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL BEATTY,                         :
                                        :
            Petitioner                  :        CIVIL NO. 1:CV-05-2067
                                        :
      v.                                :        JUDGE SYLVIA H. RAMBO
                                        :
ROBERT SHANNON, *et al.,*               :
                                        :
            Respondents                 :

## MEMORANDUM

Petitioner, Darrell Beatty, an inmate at the State Correctional Institution in

Huntingdon, Pennsylvania, commenced this action *pro se* by filing a petition for writ

of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. (Doc. 1.)

Petitioner is challenging his conviction of robbery, theft, and simple assault. In

accordance with *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000) (requiring district

courts to provide notice to *pro se* habeas petitioners of the implications of 28 U.S.C. §

2244(b) before ruling on their petitions), an order (Doc. 3) was issued advising

Petitioner that: (1) he could have the document ruled on as filed, that is, as a § 2254

petition for writ of habeas corpus and heard as such, but lose his ability to file a

second or successive petition absent certification by the court of appeals, or (2)

withdraw his petition and file one, all inclusive, § 2254 petition within the one-year

statute of limitations period prescribed by 28 U.S.C. § 2244(d).  Petitioner responded

by submitting a Notice of Election (Doc. 4) in which he opted to have his petition

considered as filed.  The parties have briefed the issues, and the matter is ripe for

disposition.  For the reasons that follow, the petition will be denied.

## I.   **Background**

The following facts are extracted from the trial court's 1925(a) memorandum

opinion filed following Petitioner's appeal from his judgment of sentence (Doc. 10-

6).[1]

> On August 3, 1999, at approximately 6:45 p.m., three black
> males entered the Abel Notary facility on South Harrison
> Street in the City of York, Pennsylvania. Al [sic] three (3)
> were wearing masks, one an opaque pantyhose type garment
> over his face and head and the other two wearing knit ski
> masks. Two were armed, the one wearing the pantyhose
> over his head with a small black handgun and one of the
> perpetrators with a ski mask, a sawed-off shotgun. The
> business was robbed of its proceeds and the employees were
> robbed of their money and jewelry. In addition, a patron
> who happened upon the business during the robbery was
> also robbed of her money at gunpoint. At the conclusion of

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by
a person in custody pursuant to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to be correct. The applicant
shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence." 28 U.S.C. § 2254(e)(1).

the robbery, the three (3) perpetrators locked all present in a basement area of the business and fled.

Two (2) employees of the business, Dawn Landis and Helen Oplanick, were able to identify one of the perpetrators as James Carter from a photo array lineup on August 26, 1999, and as a result of him having come into the business approximately two (2) hours before the robbery and asking suspicious questions about their closing time and nonsensical questions about a vehicle transfer. On September 10, 1999, Defendant Carter's girlfriend, Bobbi Alwine, provided police authorities with information implicating not only her boyfriend, James Carter, but also [Petitioner] and Defendant Gould. Ms. Alwine testified during the trial that Defendant Carter had left her apartment in the late afternoon hours of August 3, 1999, during a period which coincided with his first appearance at the Abel Notary when he made the inquiries about closing time and the vehicle title transfer. She testified that all three (3) Defendants were again at her apartment at approximately 6:00 p.m. and had gone into a bedroom area and had a private discussion out of her earshot. After a brief period, they departed her apartment with [Petitioner] carrying what appeared to be an object resembling a sawed-off shotgun concealed within a sheet. They also had a police scanner with them. The police scanner was also described by witnesses at the robbery scene. Ms. Alwine further testified that their departure coincided in time with the occurrence of the Abel Notary robbery. Approximately one (1) hour later, Defendants Carter and [Petitioner] returned to her apartment and after a short stay, [Petitioner] again departed.

Later that same evening, Defendant Carter stated to Ms. Alwine that he and the others had robbed the Abel Notary and the following day, when seeing the robbery reported in the local newspaper, again made comment of his involvement. Concededly, none of the witnesses were able to identify either [Petitioner] or Defendant Gould as the two

3

> (2) perpetrators as both were wearing full face knit ski
> masks and the police authorities were unable to lift
> successfully, any fingerprints from the crime scene. Also,
> no weapons were discharged so there was no ballistics or
> other physical evidence regarding the weapons used. The
> sawed-off shotgun was never recovered. However, on
> October 4, 1999, Defendant Gould's father, Greg Gould,
> Sr., turned in to the police a small black handgun which had
> been in his son's possession and which was believed to be
> one of the robbery weapons. (FN4 Concededly, Mr. Gould,
> Sr., testified that he recalled receiving the gun from his son
> in late June to early July, 1999, a period approximately one
> (1) month in advance of the robbery incident. It is
> suggested that this information presented a credibility issue
> for the jury.)

(Doc. 10-6 at 3-5.)

The following undisputed facts are set forth in Respondents' answer to the

habeas petition (Doc. 10).

Petitioner, Carter and Gould were arrested for the robbery, and they were tried

in a consolidated jury trial on March 8, 9, 10, and 13, 2000. On March 13, 2000, the

jury found Petitioner guilty of robbery, theft, and simple assault. As a result of the

verdict, Petitioner was sentenced on May 12, 2000, to a term of incarceration of ten

(10) to twenty (20) years.

Petitioner filed an appeal from his judgment of sentence on May 16, 2000. The

trial court directed him to file a statement of matters complained of on appeal, and he

filed the statement on June 8, 2000.  As set forth in the trial court's 1925(a) opinion,

Petitioner raised the following issues in his statement:

I    Whether the Honorable Trial Court erred in not granting the [Petitioner's] Motion to Sever his case from Co-Defendants Gould and Carter?

II    Whether the Honorable Trial Court erred, upon a Bruton request by Counsel, in redacting the statement by Carter to include "we" and/or "they" rather than limiting Carter's statement solely to Carter? (Trial Transcript, page 21 and 22).

III    Whether the Honorable Trial Court erred in not granting a mistrial when Detective Comacho viewed the suspect weapon to witnesses outside the courtroom prior to their testimony? (Trial Transcript, page 308).

IV    Whether the Honorable Trial Court erred in not granting a mistrial when a Commonwealth witness invoked her Fifth Amendment Right not to testify when called by the Commonwealth, when the Commonwealth knew she would do so prior to calling her as a witness? (Trial Transcript, page 341 to 349).

V    Whether the Honorable Trial Court erred in not granting a mistrial when Commonwealth witness Alwine said Defendant Carter stated he and his friends went to the Abel Notary and did the alleged acts which is in violation of Bruton Principles and the Court's prior ruling on the Bruton Request? (Trial Transcript, page 364 to 368).

5

VI      Whether the Honorable Trial Court erred in admitting
        the alleged gun (Exhibit 1) and the application for the
        firearm (Exhibits 5, 6 and 7) when the gun could not
        be identified and on the basis of hearsay? (Trial
        Transcript, page 412 to 417, 513, 514).

VII     Whether the Honorable Trial Court erred in refusing
        counsel's request for a corrupt and polluted source
        charge relative to Commonwealth witness Alwine?
        (Trial Transcript, page 590).

(Doc. 10-7 at 20-21.)

On November 6, 2000, the trial court filed its 1925(a) memorandum opinion.

(Doc. 10-6).  On May 2, 2001, the Pennsylvania Superior Court dismissed

Petitioner's appeal for failure to file a brief.  He filed a motion to reinstate his appeal

rights, and the motion was granted on May 31, 2001.  On June 8, 2001, Petitioner re-

filed a notice of appeal with the Pennsylvania Superior Court.  He supported his

appeal with a brief arguing that the trial court erred in failing to sever his case from

those of his co-defendants, by redacting co-defendant Carter's statement to include

"we" and/or "they" rather than limiting Carter's statement solely to Carter, and in not

granting a mistrial when Commonwealth Alwine testified that Defendant Carter

stated that he and his friends went to the Abel Notary.  (Doc. 10-7).  By memorandum

opinion dated March 14, 2002, the Superior Court affirmed the trial court's judgment

of sentence.  (Doc. 10-8).

On November 15, 2002, Petitioner filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541 *et seq.* The trial court appointed counsel to Petitioner on November 26, 2002, and on February 10, 2003, he filed an amended PCRA petition. On February 27, 2003, at his PCRA hearing, the trial court reinstated Petitioner's direct appeal rights (to the Pennsylvania Supreme Court) and preserved the PCRA issues (seven claims of ineffectiveness of counsel)[2] for further review.

---

[2]Petitioner raised the following issues in his PCRA petition (*See* Doc. 10 at 7):

I.   Whether counsel was ineffective for failing to object, request a mistrial, or request a curative instruction to the closing argument of Commonwealth that Gould argued they don't have anything against us other than being African American;

II.  Whether counsel was ineffective for failing to object, request a mistrial, or request a curative instruction to the closing argument of the prosecution that Ms. Alwine testified that Gould confessed to committing the robbery with his friends, which was factually incorrect and a highly prejudicial violation of the hearsay/Bruton standard regarding inadmissibility of statements of co-defendants;

III. Whether counsel was ineffective for failing to investigate and interview Ms. Alwine regarding her prior statement to police;

IV.  Whether counsel was ineffective for failing to meet with Petitioner or discuss trial strategy with Petitioner prior to and during trial;

(continued...)

7

On March 26, 2003, Petitioner filed a petition for allowance of appeal to the Pennsylvania Supreme Court, and the petition was denied on August 6, 2003. (Doc. 10-9). On September 12, 2003, he filed a motion for a hearing on the remaining PCRA issues. A PCRA hearing was held on October 21, 2003, and the trial court denied relief at the conclusion of the hearing. (Doc. 10-12).

Petitioner appealed the PCRA decision on November 12, 2003. On December 1, 2003, he filed his statement of matters complained of, pursuant to Pa. R. App. P. 1925(b). (Doc. 10-13). He raised the same issues on appeal that he raised in his PCRA petition. The Pennsylvania Superior Court affirmed the trial court's PCRA denial, by order dated February 11, 2005. (Doc. 10-17). On July 14, 2005, the

---

[2](...continued)

V.    Whether counsel was ineffective for failing to present a motion for acquittal or arrest of judgment based on insufficiency of evidence before the trial court or the appellate courts;

VI.   Whether counsel was ineffective for failing to present a challenge to the discretionary aspect of the sentence; and

VII.  Whether counsel was ineffective for failure to cross-examine Ms. Alwine regarding prior inconsistent statements in discussions between co-defendants and observations made on the date of the robbery.

8

Pennsylvania Supreme Court denied allowance of appeal (Doc. 10-21), and the

instant petition ensued.

## II.   **Discussion**

Petitioner raises the following issues in his habeas petition:

1)   The trial court erred when it denied his motion to sever his trial from the co-defendants;

2)   The trial court committed a *Bruton* violation by failing to redact hearsay testimony regarding statements made by Carter;

3)   The trial court erred when it denied a request for mistrial when Detective Camacho showed witnesses the suspect's weapon prior to trial;

4)   The trial court committed a *Bruton* violation by failing to redact hearsay testimony of Alwine;

5)   Counsel was ineffective for failing to meet with Petitioner to decide trial strategy;

6)   Counsel was ineffective for failing to challenge the sufficiency of evidence;

7)   Counsel was ineffective for failing to conduct proper cross-examination to elicit inconsistencies in Commonwealth witness's testimony[3];

8)   Counsel was ineffective for failing to object to the Commonwealth's closing argument or request a mistrial or curative instruction; and

---

[3]Inasmuch as Ms. Alwine was the "Commonwealth witness" Petitioner referred to when raising this issue in his PCRA Petition and subsequent appeal, the Court infers that Petitioner refers to Ms. Alwine here.

9)   Counsel was ineffective for failing to investigate the Commonwealth's witnesses.

Petitioner's issues 1, 3, 6, and 9 are procedurally defaulted. Issues 1 and 6 are procedurally defaulted because they were decided on independent state law grounds and do not present a federal question. Issues 3 and 9 are procedurally defaulted because they were waived. The remaining issues are deemed properly exhausted, but lack merit.

## A.   <u>Exhaustion and Procedural Default</u>

A state prisoner cannot obtain habeas relief in federal court unless he has exhausted the remedies available in state court, there is an absence of available state corrective process, or circumstances exist that render such  process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1). To satisfy these statutory requirements, a federal habeas petitioner must have presented the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *see also Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004). Thus, a petitioner bears the burden of demonstrating that he has "fairly presented" his claims to the state's highest court, either on direct appeal or in a state post-conviction

10

proceeding.[1] *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997); *see also*

*McMahon v. Fulcomer*, 821 F.2d 934, 940 (3d Cir. 1987).  A petitioner fairly presents

his claim when he presents the same factual and legal basis for the claim to the state

courts. *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007); *see also Duncan v.*

*Henry*, 513 U.S. 364, 366 (1995).  In addition, the state court must be put on notice

that a federal claim is being asserted. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir.

2001).

The exhaustion requirement is satisfied if a petitioner's claims are either

presented to the state courts directly on appeal from the judgment of sentence, or

through a collateral proceeding, such as a PCRA petition. *Swanger v. Zimmerman*,

750 F.2d 291, 295 (3d Cir. 1984).  It is not necessary for a petitioner seeking federal

habeas relief to present his federal claims to state courts *both* on direct appeal *and* in

a PCRA proceeding.  *Id.*  Further, even if the state courts refuse to consider the claim

on procedural grounds, the claim is exhausted if the state courts had the opportunity

to address it. *Nara*, 488 F. 3d at 198; *Bond v. Fulcomer*, 864 F.2d 306, 309 (3d Cir.

---

[1]Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under Section 2254. *See In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000) (per curiam).

1989) (effectively overruled on other grounds by *Harris v. Reed*, 489 U.S. 255 (1989)).

A petitioner "shall not be deemed to have exhausted the remedies available . . . if he has the right under the law of the [s]tate to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). "[I]f [a] petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999). A federal court can reach the merits of procedurally defaulted claims only if the petitioner demonstrates either "cause and prejudice" in connection with the procedural default, or that a fundamental miscarriage of justice would result if his claim was not reviewed. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000).

The exhaustion requirement is not a mere formality. It serves the interests of

12

comity between the federal and state systems, by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights. *Crews v. Horn*, 360 F.3d 146, 151 (3d Cir. 2004).

### 1.    Independent State Law Grounds- Issues 1 and 6

The procedural default doctrine prohibits federal courts from reviewing a petitioner's claim defaulted in state courts on an independent and adequate state law ground, *i.e.* a rule of state law that is "independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. The purpose of the procedural default rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their federal claims in state court. *Id.* at 732. Although the issue of procedural default is best addressed by the state courts, a federal court may dismiss a petition as procedurally barred if state law would unambiguously deem it defaulted. *Carter v. Vaughn,* 62 F.3d 591, 595 (3d Cir. 1995).

In the instant case, Petitioner's issue 1, that the trial court erred in not severing his criminal case from the cases of the other two co-defendants, is procedurally defaulted because it was presented and argued as an issue arising under state law, namely PA. R. CRIM. P. 1127 and 1128, in Petitioner's direct appeal from his judgment of sentence. (Doc. 10-7 at 12.) Moreover, the trial court analyzed the issue

13

in its 1925(a) memorandum opinion by applying PA. R. CRIM. P. 1127 and 1128 to the facts of the case, and the Pennsylvania Superior Court explicitly relied on this analysis in disposing of this issue. (Doc. 10-6 at 5-9; Doc. 10-8 at 4.) Petitioner did not raise this issue in his PCRA petition. Accordingly, it is procedurally defaulted because it was decided on independent state grounds and Petitioner did not present it in a way that would give the state courts notice that a federal question was being asserted. *See Coleman*, 501 U.S. at 729; *Keller*, 251 F.3d at 413.

Similarly, issue 6, that trial counsel was ineffective for failing to challenge the sufficiency of the evidence presented at trial, is procedurally defaulted because it was decided on independent state law grounds and presents no federal issue. While it is presented as an ineffective assistance of counsel claim and thus might initially appear to implicate the right to counsel under the Sixth Amendment, the PCRA court and Pennsylvania Superior court began by analyzing the issue in terms of a sufficiency of the evidence claim. This analysis is based solely on state law. The PCRA court applied the standards set forth in *Commonwealth v. Williams*, and *Commonwealth v. Wanner*, and determined that there was sufficient evidence, if believed by the factfinder, to find Petitioner guilty of the charged offenses. (Doc. 10-15 at 14-15)

14

Thus, it found that there was no merit to Petitioner's argument that Robinson was

ineffective for failing to challenge the sufficiency of the evidence. (*Id.*)

> The Pennsylvania Superior Court began its analysis as follows:

> The test for determining the sufficiency of the evidence is whether,
> viewing the evidence in the light most favorable to the Commonwealth
> as verdict winner and drawing all proper references [*sic*] favorable to
> the Commonwealth, the jury could reasonably have determined all
> elements of the crime to have been established beyond a reasonable
> doubt.

(Doc. 10-17 at 9-10 (citing *Commonwealth v. Murphy*, 657 A.2d 927, 930 (Pa.

1995)). "This standard is equally applicable to cases where the evidence is

circumstantial rather than direct so long as the combination of the evidence links the

accused to the crime beyond a reasonable doubt." (*Id.*) In reviewing the evidence

presented at trial pursuant to this standard, the Pennsylvania Superior Court

determined that there was sufficient evidence such that "appellant was incontestably

implicated in the robbery," (Doc. 10-17 at 14 (citing *Beatty*, No. 1029 MDA 2001,

unpublished memorandum at 5.)) The Court further found that Petitioner had "utterly

failed" to develop his argument as to why the evidence did not support the elements

of the crimes of which he was convicted, and thus there was no merit to the argument

that counsel was ineffective for failing to challenge the sufficiency of the evidence.

(*Id.*) Because this issue was decided on independent state grounds solely in terms of

15

the sufficiency of the evidence claim, and the ineffective assistance of counsel claim never was reached, it is procedurally defaulted. *See Coleman*, 501 U.S. at 729; *Keller*, 251 F.3d at 413. Moreover, Petitioner has neither demonstrated "cause and prejudice" in connection with the procedural default of issues 1 and 6, nor has he asserted that a fundamental miscarriage of justice would result if his claim was not reviewed. *See Edwards*, 529 U.S. at 451; *Wenger*, 266 F.3d at 223; *Lines*, 208 F.3d at 166. Accordingly, this court cannot reach the merits on these issues.

2.    Waiver- Issues 3 and 9

A claim also may be procedurally defaulted if a state court has concluded that the claim was waived. "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa. Const. Stat. § 9544(b). If a state court finds a claim to be waived, it becomes procedurally defaulted, thereby barring federal habeas review. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir.), *cert. denied*, 532 U.S. 980 (2000).

In the instant case, issues 3 and 9 are procedurally defaulted because Petitioner initially raised the claims on his appeals to the Pennsylvania Superior Court, but then waived the issues when he did not pursue them in his appellate briefs. Issue 3, that

16

the trial court erred when it denied a request for mistrial when Detective Camacho showed witnesses the suspect's weapon prior to trial, was raised in Petitioner's 1925(b) Statement on his direct appeal from his judgment of sentence and addressed by the trial court in its 1925(a) memorandum opinion. (Doc. 10-6 at 11.) However, Petitioner did not address the issue in the argument section of his appellate brief. (Doc. 10-7.) An issue raised in a 1925(b) statement but not developed in an appellate brief is deemed to be abandoned, and therefore, waived. *Commonwealth v. Heggins*, 809 A.2d 908, 912 (Pa. Super. Ct. 2002). Accordingly, the Superior Court did not address issue 3 in its memorandum. (Doc. 10-8.) Because the issue was waived, it is procedurally defaulted and cannot be addressed on federal habeas review. *See Werts*, 228 F.3d at 192.

As to issue 9, that counsel was ineffective for failing to investigate the Commonwealth's witnesses, Petitioner raised this issue in his PCRA petition and in his appeal to the Pennsylvania Superior Court, but explicitly abandoned the issue in his appellate brief, stating that the argument has no merit. (Doc. 10-14 at 27.) Because the issue was abandoned and therefore waived, it is procedurally defaulted and cannot be addressed on federal habeas review. *See Heggins,* 809 A.2d at 912; *Werts*, 228 F.3d at 192.

17

The remainder of Petitioner's issues, specifically issues 5, 7 and 2, 4, and 8 are exhausted and will be reviewed on the merits.

**B.     Merits Analysis**

      1.    <u>Scope of Habeas Review</u>

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), revised the standard of review for cases challenging state convictions pursuant to 28 U.S.C. § 2254. *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996) (citing AEDPA). Section 2254(a) provides that the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the

18

Supreme Court] on a question of law, or if the state court decides a case differently

than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*

*v. Taylor*, 529 U.S. 362, 413 (2000); *see Matteo v. Superintendent, SCI-Albion*, 171

F.3d 877, 891 (3d Cir. 1999) (quoting *O'Brien v. Dubois*, 145 F.3d 16, 24-25 (1ˢᵗ Cir.

1998) (for a decision to be "contrary to" federal law, "Supreme Court precedent

requires an outcome contrary to that reached by the relevant state court")). A state

court decision represents an "unreasonable application of" Supreme Court precedent

if it "correctly identifies the governing legal rule but applies it unreasonably to the

facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08. Thus, "a federal

habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also

be unreasonable." *Id.* at 411.

Pursuant to 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a

state court's findings of fact are correct. *See supra* note 1. A habeas petitioner must

rebut this presumption by clear and convincing evidence. *See* 28 U.S.C. §2254(e)(1);

*Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003). This presumption of correctness

19

applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

      2.    <u>Analysis</u>

          a.    <u>Ineffective Assistance of Counsel- Issues 5 and 7</u>

Petitioner claims that his trial counsel, Richard Robinson ("Robinson"), was ineffective in failing to meet with Petitioner before trial and in failing to conduct proper cross-examination of the Commonwealth's witness. Petitioner raised these issues in his PCRA petition and in his 1925(b) statement on appeal to the Pennsylvania Superior Court and argued them in his appellate brief. (Doc. 10 at 7; Doc. 10-13; Doc. 10-14 at 9, 28-29, 31-32). A claim of ineffective assistance of counsel implicates the Sixth Amendment right to counsel, and thus Petitioner put the state courts on notice of the federal question involved in raising his ineffective assistance of counsel claims. Because Petitioner raised these issues at all levels and put the state courts on notice of the federal issue, he properly exhausted these claims, and they will be analyzed on the merits.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test which must be satisfied for petitioner to prevail on an ineffective assistance of counsel claim. The first prong requires petitioner to demonstrate that

his trial counsel's performance fell below an "objective standard of reasonableness." *Id.* at 688. The Supreme Court explained that:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'

*Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Therefore, a convicted defendant asserting ineffective assistance of counsel must identify the acts or omissions that are alleged not to have been the result of reasoned professional judgment. *Id.* at 690. The reviewing court must then determine whether, in light of all circumstances, the identified acts or omissions were outside "the wide range of professionally competent assistance." *Id.*

Under the second prong of *Strickland*, the defendant must establish that counsel's deficient performance prejudiced the defense. *Id.* at 687. To establish this, the defendant must demonstrate that counsel's errors were so serious as to deprive the defendant of a fair trial or a trial whose result is reliable. *Id.* More specifically, the defendant "must show that there is a reasonable probability that, but for counsel's

21

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). A petitioner must show that the state court's decision was objectively unreasonable. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). It is not enough to convince a federal habeas court that, in its independent judgment, the state court erred in applying *Strickland. Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

With respect to Petitioner's issue 5, that Robinson was ineffective in failing to meet with him prior to trial, the PCRA court concluded that Robinson had "adequate contacts" with Petitioner and "properly pursued available defenses." (Doc. 10-15 at 14). It is apparent from the trial court's conclusion that Petitioner did not demonstrate that Robinson's performance fell below an objective standard of reasonableness, as required under the first prong of the *Strickland* test, and thus no further analysis was necessary. *See Strickland*, 466 U.S. at 688. On appeal, the Superior Court found that the record adequately supported the PCRA court's conclusion on this issue and therefore found that it had no merit. (Doc. 10-17 at 10).

22

Upon review of the record, this court concludes that the Pennsylvania Superior Court's decision on this issue is neither contrary to, nor an unreasonable application of, *Strickland*. The PCRA hearing record supports the conclusion that Robinson had adequate contact with Petitioner. Even though Petitioner testified that he met only one time with Robinson prior to trial, the PCRA court found Robinson's testimony that he met with Petitioner on more than one occasion before trial to be credible. (Doc. 10-11 at 5, 28; Doc. 10-15 at 14). Because the record shows that Petitioner did not succeed in demonstrating that Robinson's performance fell below an objective standard of reasonableness, the PCRA court properly ended its analysis there, and the Superior Court properly concluded that the record supported the PCRA court's conclusion.

As to Petitioner's issue 7, that Robinson was ineffective for failing to conduct proper cross-examination to elicit inconsistencies in Commonwealth witness's[5] testimony, the PCRA Court found that a review of the trial transcript revealed that a "vigorous, complete and effective cross-examination of [Alwine] was accomplished." (Doc. 10-15 at 17.) The PCRA Court found that the cross-examination focused on

---

[5]As explained in note 3, *supra*, the Court infers that the Commonwealth witness Petitioner refers to is Ms. Alwine.

Alwine's prior inconsistent statements, her cooperation in exchange for favorable treatment, and dismissal of charges pending against her, and thus these issues were "effectively and completely presented to the jury for credibility determining purposes." (*Id.*) It is apparent from the PCRA court's conclusion that these issues were "effectively and completely presented" that it found Petitioner did not demonstrate that Robinson's performance fell below an objective standard of reasonableness, as required under the first prong of the *Strickland* test, and thus no further analysis was necessary. *See Strickland*, 466 U.S. at 688. On appeal, the Pennsylvania Superior Court found that the record adequately supported the PCRA court's conclusion on this issue and therefore found that it had no merit. (Doc. 10-17 at 19).

Upon review of the record, this court concludes that the Pennsylvania Superior Court's decision on this issue is neither contrary to, nor an unreasonable application of, *Strickland*. As noted in the Superior Court's memorandum, the trial record demonstrated that Robinson was effective in bringing out various inconsistencies between Alwine's testimony at trial and the taped statement she gave to Detective Comacho on September 10, 1999. (*See* Doc. 10-17 at 18). Robinson also brought out discrepancies between Alwine's preliminary hearing testimony regarding the sheet

24

she alleged covered a sawed-off shotgun and her testimony at trial. (*See id.* at 19). Because the record shows that Petitioner did not succeed in demonstrating that Robinson's performance fell below an objective standard of reasonableness, the PCRA court properly ended its analysis there, and the Superior Court properly concluded that the record supported the PCRA court's conclusion.

b.   *Bruton* Violation- Issues 2, 4, and 8

Petitioner claims that the trial court committed a *Bruton* violation when it allowed Alwine to testify that Carter and his "friends"[6] had committed the robbery. Similarly, he claims a *Bruton* violation when Alwine testified that Carter had admitted that "we" and/or "they" had committed the robberies, and the court refused to limit testimony of the admission to Carter alone. In addition, Petitioner claims that counsel was ineffective for failing to object or request a mistrial or curative instruction as to the portion of the Commonwealth's closing argument in which the prosecutor referred to Alwine's testimony that Carter told her that he and his "friends" robbed the Abel Notary.

In *Bruton v. United States*, the Supreme Court held that in a joint trial, a co-defendant's incriminating out-of-court statement shall be redacted to limit any

---

[6]Instead of "others," as discussed below.

incrimination to the declarant. 391 U.S. 123, 126 (1968). This ruling is meant to protect a defendant's Sixth Amendment right to confront and cross-examine witnesses; if the incriminating co-defendant does not testify, the defendant is deprived of the opportunity to test the veracity of the out-of-court statement. *Id.* at 127-28. "Inasmuch as Defendant Carter's statement, as actually made to Ms. Alwine, directly implicated his Co-Defendants, the Trial Court directed a redaction of his statement to Ms. Alwine to reference that he, Defendant Carter, and *others* had gone to the Abel Notary and committed the robbery." (Doc. 10-6 at 10 (emphasis added)).

Upon review of the record, the court agrees with the Pennsylvania Superior Court's conclusion that, to the extent the trial court erred in allowing testimony that Carter admitted to Alwine that he and his "friends" committed the robbery, and the prosecutor's statement in closing of Carter's reference to "we" and "they," the error was harmless beyond a reasonable doubt. (Doc. 10-8 at 6). The Superior Court concluded that "[t]he circumstantial and direct evidence inculpating the three co-defendants renders harmless the single usage of the word 'friends' when relating Carter's admission before the jury." (*Id.* at 7). Further, in the PCRA appeal, the Superior Court found that, regardless of whether counsel should have objected to the prosecutor's closing argument, Petitioner suffered no prejudice because there was no

26

"reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different." (Doc. 10-17 at 9 (quoting *Commonwealth v. duPont*, 860 A.2d 525, 531 (Pa. Super. Ct. 2004)).

Petitioner has failed to identify any precedent or authority to demonstrate that the Superior Court's analysis is inconsistent with federal law as decided by the Supreme Court, or that the decision is an unreasonable application of the facts, and the claim will be denied.

## III.   Conclusion

Issues 1, 3, 6, and 9 are denied because the Petitioner has procedurally defaulted on these claims. With regard to issues 2, 4, 5, 7, and 8, Petitioner has failed to meet his burden, and these issues will be denied on the merits. An appropriate order will issue.

SYLVIA H. RAMBO
United States District Judge

Dated: December  *14* , 2007

27

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DARRELL BEATTY,                           :
                                          :
            Petitioner                    :          CIVIL NO. 1:CV-05-2067
                                          :
      v.                                  :          JUDGE SYLVIA H. RAMBO
                                          :
ROBERT SHANNON, *et al.,*                 :
                                          :
            Respondents                   :

## ORDER

**AND NOW**, in accordance with the foregoing memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1)   The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2)   The Clerk of Court is directed to **CLOSE** this case.

3)   There exists no basis for the issuance of a Certificate of Appealability.

SYLVIA H. RAMBO
United States District Judge

Dated: December *14* , 2007